UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.: _____

FRANTZ CHERY, M.D., P.A. and FRANTZ CHERY, M.D., )
)
Plaintiffs, )
)
v. )
)
NORTH BROWARD HOSPITAL )
DISTRICT d/b/a Broward Health North, )
)
Defendant. )

## COMPLAINT

Plaintiffs FRANTZ CHERY, M.D., P.A. ("FCHPA") and FRANTZ CHERY, M.D. ("Dr. Chery") (collectively, "Plaintiffs") file this complaint against Defendant NORTH BROWARD HOSPITAL DISTRICT d/b/a Broward Health North ("BHN" or "Defendant") and in support state:

### JURISDICTION, VENUE AND PARTIES

1. This action is brought under 42 U.S.C. § 1981. The Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

2. Plaintiffs are seeking damages which include back pay, front pay, compensatory damages, punitive damages, attorney's fees and costs, and any further relief provided in the referenced statute, and that the Court deems proper.

3. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred within the Southern

1



www.saenzanderson.com

District of Florida, Defendant substantially conducts business within the Southern District of Florida, Defendant has agents and employees in the Southern District of Florida, and Defendant's business is located within Broward County.

4. Dr. Chery is a Black male individual originally from Haiti.

5. In 1972, Dr. Chery received his medical degree from the Medical School at Faculte de Medecine et de Pharmacie, State University of Haiti.

6. Dr. Chery emigrated to the United States in 1974. In 1981, Dr. Chery became a citizen of the United States of America. Dr. Chery is a resident of Broward County, Florida.

7. Dr. Chery is a Doctor of Medicine and a Board-Certified General Surgeon. He is fully licensed to practice in the State of Florida.

8. Dr. Chery's education and academic degrees include the following: a rotating internship at State University Hospital, Port-au-Prince, Haiti; a surgery residency at State University Hospital, Port-au-Prince, Haiti; a ECFMG certification; a surgery internship at DC General Hospital, Howard University Service, Washington DC; a surgery residency at St. Mary's Hospital, Yale University Affiliate, Waterbury, Connecticut; a surgery residency at Memorial-Sloan Kettering Cancer Center, Cornell University Affiliate, New York; a surgery residency at Howard University Hospital, Washington DC; and a chief surgery residency at Howard University Hospital, Washington DC.

9. Dr. Chery's licensures and certifications include an American Board Surgery Certification and four recertifications; an A.T.L.S. recertification; and a B.L.S. & A.C.L.S. recertification.

2



www.saenzanderson.com

10. As a doctor and surgeon, Dr. Chery has worked in private practice in Haiti and in the United States as follows: Surgery House Officer at Providence Hospital, Washington DC (1983-1984); Trauma Surgeon at D.C. General Hospital (1983-1985); F.T. general surgery practice, Washington D.C. (1985-1987); trauma and general surgery practice, Kansas City, MO (1987-1989); trauma and general surgery practice in Broward County, Florida (1989-1996); trauma and general surgery practice, Logan, West Virginia (1996-1997); general surgery practice, Broward County, Florida (1997-2003); laparoscopic obesity surgery practice, Davis Regional Medical Center, NC (2003-2004); general surgery practice, Richmond VA (2004-2008); general surgery practice, St. Joseph Hospital, Buchannon, West Virginia (2008-2010); and general surgery practice, Broward County, Florida (2010 to the present).

11. FCHPA is a Florida corporation doing business in Broward County, Florida. Dr. Chery is the sole owner, director, and officer of FCHPA. Dr. Chery created FCHPA to contract with Defendant and to engage in private practice as a surgeon and doctor in Broward County, Florida.

12. Plaintiffs are protected by Section 1981 because they essentially are a Black individual belonging to the Haitian "race" and ancestry under 42 U.S.C. § 1981.

13. Dr. Chery is of Black Haitian ancestry and ethnic characteristics.

14. Dr. Chery has the physical, cultural, and linguistic characteristics of those belonging to the Black-Haitian race.

15. Plaintiffs have suffered and are suffering discrimination and harassment because Dr. Chery belongs to the Black-Haitian race and ancestry and has Haitian ethnic characteristics.

3



www.saenzanderson.com

16. Defendant is a Florida not for profit corporation. At all times material hereto and currently, BHN carried out substantial and not isolated business activities and had employees and agents in the Southern District of Florida.

17. Defendant operates several hospitals and medical facilities in Florida, including Broward Health North, Broward Health Coral Springs, Broward Health Medical Center, Broward Health Imperial Point, Salah Foundation Children's Hospital, Broward Health Weston, Broward Health Community Health Services, Broward Health Physician Group, Broward Health International, Broward Hearth Urgent Care, and Broward Health Foundation.

18. Dr. Chery has provided surgeon services for Broward Health North, Broward Health Coral Springs, and Broward Health Medical Center at various times since 2010.

19. Dr. Chery has a private practice in Broward County, Florida, which depends on referrals and patients he gets from working at BHN's hospitals.

## FACTUAL BACKGROUND

20. In the medical community, when a surgeon gets "Staff Privileges" status from a medical institution, the event is considered of paramount importance. This is so because getting that status essentially means that the surgeon is now viewed as an employee of a hospital with full access to that hospital and with full authority to admit patients, and to utilize the hospital's resources to provide treatment for those patients.

21. Naturally, having full access to a hospital and to its resources also means that a physician has the ability to make continuous contact with other hospital physicians, patients and with hospital personnel to receive "referrals" and patients. These "referrals" are of paramount importance for any physician to build and maintain a successful private practice. The more

4



"referrals" and patients a physician gets, the more income and profit his or her business is likely to net.

22. Well credentialed surgeons need full access to a hospital with "Staff Privileges" to provide higher quality care to his or her patients through access to the hospital's resources and to receive referrals and patients to make a decent living. The opposite is also true. In other words, a physician with no "Staff Privileges" or a physician with "Staff Privileges" but with no physical contact with patients, co-workers, hospital staff, and other physicians, is not able to provide the same level of care due to the lack of resources or access to resources and, therefore, is destined to fail in his private practice. This fact is well known throughout the medical community.

23. In early 2019, Dr. Chery discovered that Defendant unfairly gave most "referrals" or patients for surgery to a handful of White American surgeons and not to him. This was especially true at Broward Health North.

24. To combat BHN's pattern of discriminatory practice and in an effort to get more "referrals" or patients for surgery, Dr. Chery applied for a position at Broward Health North that would allow him to see patients from the emergency room on an "on-call" basis.

25. On or about May 6, 2019, Dr. Chery, through FCHPA, finally secured a contract with BHN to provide surgery services to patients from the emergency room at Broward Health North on an "on-call" basis. Per the terms of the contract with BHN, Plaintiffs were to get paid a certain amount of money (the "Coverage Rate") for each period of call coverage provided by Dr. Chery.

26. At the time Plaintiffs secured their contract with BHN, Dr. Chery had over thirty-five (35) years of successful practice as a physician.



www.saenzanderson.com

27.    Dr. Chery presumed that his contract with BHN meant that BHN considered him equal to his White American counterparts and would call him for more surgery work at the emergency room at Broward Health North more often. He was mistaken.

28.    BHN continued to unjustly give a much higher percentage of the surgery work to Dr. Chery's White American counterparts.

29.    Defendant initially took over two (2) months to call Dr. Chery to offer him surgical work pursuant to their contract. From then on, up until on or about February of 2020, BHN called Dr. Chery in to perform surgery very few times; far less times than Defendant called White American surgeons and physicians. As a result, White American doctors unfairly ended up with more work, more surgeries, more "referrals," more patients and, naturally, with more income. "Inequality" best described Defendant's treatment towards Dr. Chery and his White American counterparts.

30.    In addition, when Dr. Chery was called in to perform a surgery, he endured the stress of working in an environment where he did not feel welcomed, due to the persistent questions related to his competence as a physician, because White American doctors would not even say "Hi!" to Dr. Chery, or because he was simply ignored by White American surgeons. White American surgeons did not undergo that stressful environment.

31.    At all times relevant, Defendant gave preferential treatment, which meant more income and more patients that could potentially build or maintain a successful practice, to White American/ Non-Black Haitian surgeons. Black, Haitian surgeons and surgeons of Haitian descent such as Plaintiff, received far less patients and consequently received meager pay with practices that barely survived.

6



www.saenzanderson.com

32. On or about October 17, 2019, a White American surgeon was involved in an incident regarding a screw left deeply embedded in a patient's necrotic bone (the "KA Incident").

33. The surgeon involved in the KA Incident briefly and informally, without following protocol, asked Dr. Chery what could be done to help the patient whose necrotic bone had fallen victim to the White American surgeon. Essentially, the surgeon explained that he dropped a screw in his patient's belly/lower back area and could not retrieve it. In response, Dr. Chery briefly explained his thoughts to the surgeon that caused the KA incident. This surgeon never asked Dr. Chery to take over the patient.

34. Shortly thereafter, the White American surgeon that caused the KA Incident, without notice to Dr. Chery, complained about him to Dr. Gary Lehr, the Defendant's Chief of Staff at the time, and a friend of the American surgeon that caused the KA Incident. Dr. Gay Lehr is also a White American surgeon. The doctor that caused the KA Incident and Dr. Lehr are direct competitors of Dr. Chery because they make a living from "referrals" and "on-call" surgeries from the emergency room at Broward Health North.

35. From 2019 through 2021, Dr. Lehr was one of the persons who decided or influenced the decision of to whom to refer emergency surgeries at Broward Health North. In other words, Dr. Chery's income derived from Broward Health North depended, at least in part, on whether Dr. Gary Lehr authorized referrals to Dr. Chery. Depending on what discovery ultimately reveals, Plaintiffs are evaluating whether Dr. Lehr also discriminated against Dr. Chery on the basis of race/ancestry.

36. Soon after Dr. Lehr heard the complaint launched by the White American surgeon that caused the KA incident, Dr. Lehr irrationally made the decision to investigate Dr. Chery and

7



sent Dr. Chery to be rigidly evaluated by the "Medical Staff Peer Review Committee" (the "Peer Review Committee" or "PRC").

37. The Peer Review Committee is a panel conformed by physicians who work for BHN. The Peer Review Committee includes surgeons who are in direct competition for patients and for work with Dr. Chery.

38. This panel decides whether a physician should initially be granted "Staff Privileges", and whether these "Staff Privileges" of a physician should be revoked.

39. On or about July of 2020, the PRC, composed of a panel of, upon information and belief, non-Black Haitian physicians, began an investigation against Dr. Chery. The investigation was aimed at discovering whether Dr. Chery's performance as a surgeon fell below the standard of care applied to doctors in the medical profession.

40. Surprisingly, the PRC did not bother to investigate anything having to do with the KA Incident, but instead investigated Dr. Chery's past treatment of two other patients, YM and BH (the "PRC Investigation").

41. The PRC investigation resulted in a series of meetings, administrative hearings, and the taking of testimony of several witnesses adverse to Dr. Chery, including the testimony of Dr. Gary Lehr (the "Review Process"). Upon information and belief, all PRC panels and witnesses involved in the Review Process are non-Black Haitian or White American physicians.

42. The effect of Dr. Chery undergoing the Review Process was that he was effectively suspended during the life of the Review Process. Throughout the Review Process, Dr. Chery's reputation and character has been attacked and this has caused mental distress to Dr. Chery.



43. Dr. Chery's distress has especially become untenable since he is now facing severe financial obligations that Dr. Chery cannot afford. His business is at the brink of bankruptcy because he no longer receives "referrals" or patients as a result of the suspension caused by the ongoing investigation and Review Process.

44. The PRC and, so far, all instances of appeal during the Review Process, have concluded that Dr. Chery engaged in conduct that fell below the standard of medical care. To date, all authorities presiding the Review Process have recommended harsh sanctions against Dr. Chery, including the revocation of Dr. Chery's "Staff Privileges."

45. White American surgeons and non-Black Haitian surgeons, including Dr. Gary Lehr, have in the past engaged in conduct similar or worse than what Dr. Chery was accused of doing during the PRC Investigation. However, these doctors are rarely referred to the PRC and they are not treated so harshly as Dr. Chery has been treated. Dr. Chery is singled out and treated differently because he is a Black Haitian.

46. To the best of Plaintiffs' information and belief, all physicians involved in the Review Process, the doctor that caused the KA incident, and Dr. Lehr are of non-Black Haitian race or ancestry or are White Americans. They, to the best of Plaintiff's information and belief, neither had an extensive peer review, nor their privileges suspended or revoked by the Defendant.

47. To the best of Plaintiffs' information and belief, all physicians involved in the Review Process, the doctor that caused the KA incident, and Dr. Lehr have committed acts of significant deviation from the standard of care, based upon outcomes of treatment or alleged malpractice, but who have not been subjected to such harsh scrutiny and review by the Defendant.

9



www.saenzanderson.com

48. As of the filing of this complaint, Plaintiffs believe they are not being provided a fair, objective, and impartial Review Process.

**COUNT I: CIVIL RIGHTS VIOLATION UNDER 42 USC § 1981**

49. Plaintiffs re-assert all allegations contained in paragraphs 1-48 above as though fully set forth herein.

50. Dr. Chery is a citizen of the United States who was born in Haiti and he is a member of a racial minority group that is commonly perceived as both ethnically and physiologically distinct.

51. Since at least May of 2019, Plaintiffs and Defendant entered into a contractual relationship; to wit: Plaintiffs received the benefit of being able to treat patients in the Defendant's hospitals and of receiving referrals and new patients from the Defendant's hospital, while the Defendant's hospitals received the benefit of providing care to Plaintiffs' patients.

52. Since 2020, or perhaps earlier, and continuing today, Defendant has deprived and impaired (and continues to deprive and impair) Plaintiffs of their right to make, perform, and enforce contracts on the basis of Dr. Chery's race and ancestry.

53. As a direct and proximate result of the foregoing, Defendant has deprived and continues to deprive Plaintiffs of the benefits of their contractual relationship, and of achieving a livelihood as a Doctor of Medicine in the community and elsewhere.

54. As a direct and proximate result of the foregoing, Plaintiffs have suffered, and continue to suffer, irreparable injuries relating to embarrassment, degradation, humiliation, emotional distress, physical pain and mental anguish, injury to professional standing, injury to

10



character and reputation, and losses of income, property, wealth, and have sustained damages and continue to sustain damages.

55. Defendant's conduct is and was reckless with knowledge that its actions caused Plaintiffs damages on the basis of Dr. Chery's race and ancestry.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

   a. Enter judgment in Plaintiffs' favor and against the Defendant for its violations of 42 U.S.C.A. § 1981, as amended;

   b. Award Plaintiffs actual damages suffered;

   c. Award Plaintiffs compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress Plaintiff Chery has suffered;

   d. Award Plaintiffs prejudgment interest on their damages award;

   e. Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with it, from discriminating, harassing and retaliating against Plaintiffs;

   f. Award Plaintiffs punitive damages;

   g. Award Plaintiffs reasonable costs and attorneys' fees; and

   h. Grant Plaintiffs such other and further relief as this Court deems equitable and just.

## COUNT II: HOSTILE WORK ENVIRONMENT UNDER 42 USC § 1981

56. Plaintiffs adopt and incorporate by reference the allegations in paragraphs 1 to 48 of this Complaint.

57. Dr. Chery is a citizen of the United States who was born in Haiti and he is a member of a racial minority group that is commonly perceived as both ethnically and physiologically distinct.



58. Since at least May of 2019, Plaintiffs and Defendant entered into a contractual relationship; to wit: Plaintiffs received the benefit of being able to treat patients in the Defendant's hospitals and of receiving referrals and new patients from the Defendant's hospital, while the Defendant's hospitals received the benefit of providing care to Plaintiffs' patients.

59. Plaintiffs are qualified to perform as surgeons at the Defendant.

60. During the period Plaintiffs have performed work for the Defendant, Plaintiffs have been subjected to a hostile work environment, as more fully described in paragraphs 1-48 of this Complaint. This conduct was substantially motivated by Dr. Chery's race.

61. The offensive and discriminatory conduct referred to in paragraphs 1-48 was offensive to Plaintiffs and would be offensive to a reasonable person.

62. The offensive and discriminatory conduct referred to in paragraphs 1-18, was sufficient severe and pervasive and altered the terms and conditions of Plaintiffs' work relationship with Defendant.

63. Similarly situated employees, specifically other members of Defendant's team and who are not Black Haitian were not subjected to the same conduct referred to in paragraphs 1-48 of this Complaint.

64. Defendant was aware the hostile work environment Plaintiffs were subjected to and took no remedial action to cease such behavior.

65. As a direct and proximate result of the foregoing, Plaintiffs have suffered embarrassment, humiliation, emotional distress, and other forms of damage.

66. Plaintiffs have suffered damages of an ongoing and continuous nature.

12



www.saenzanderson.com

67. Defendant's conduct is and was reckless with knowledge that its actions caused Plaintiffs damages on the basis of Dr. Chery's race and ancestry.

**WHEREFORE**, Plaintiffs request that this Honorable Court:

a. Enter judgment in Plaintiffs' favor and against the Defendant for its violations of 42 U.S.C.A. § 1981, as amended;

b. Award Plaintiffs actual damages suffered;

c. Award Plaintiffs compensatory damages under 42 U.S.C.A. § 1981 for the embarrassment, anxiety, humiliation and emotional distress Plaintiff Chery has suffered;

d. Award Plaintiffs prejudgment interest on their damages award;

e. Enjoin the Defendant, its officers, agents, employees and anyone acting in concert with it, from discriminating, harassing and retaliating against Plaintiffs;

f. Award Plaintiffs punitive damages;

g. Award Plaintiffs reasonable costs and attorneys' fees; and

h. Grant Plaintiffs such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury of all issues triable as of right by jury.

13



www.saenzanderson.com

Respectfully submitted,

**<u>s/Tanesha Blye</u>**
Tanesha Blye (FBN: 0738158)
E-mail: tblye@saenzanderson.com
Aron Smukler (FBN: 297779)
E-mail: asmukler@saenzanderson.com
R. Marin Saenz (FBN: 0640166)
E-mail: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiffs*

14



www.saenzanderson.com